**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: September 14 2009

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **In Re** | ) | **Case No. 08-33352** |
| | ) | |
| Robert R. Perkins | ) | **Chapter 13** |
| | ) | |
| | ) | |
| **Debtor(s).** | ) | **JUDGE MARY ANN WHIPPLE** |

<u>**ORDER**</u>

This case is before the court on the Chapter 13 Trustee's Motion to Dismiss Based Upon Debtor's Exceeding Chapter 13 Unsecured Debt Limits Under 11 U.S.C. § 109(e) ("Motion") [Doc. # 19].

The Motion asserts that Debtor has noncontingent liquidated unsecured debt as of the date of the filing of the petition exceeding the $336,900 Chapter 13 eligibility limit of 11 U.S.C. § 109(e). *See In re Pearson*, 773 F.2d 751 (6th Cir. 1983); *In re Odette*, 347 B.R. 60 (Bankr. E.D. Mich. 2006). Debtor's Schedule F lists total unsecured debts of $889,988.09 and his Schedule D lists bifurcated unsecured amounts of $187,762.85.

Debtor opposes the Motion, asserting that the debts scheduled as contingent or unliquidated are properly excluded from the statutory eligibility calculation. As virtually all of the debts listed, most of which arise out of a failed business venture called PEC Biofuels, LLC, are scheduled as contingent and/or unliquidated, Debtor is eligible for Chapter 13 relief based on his argument.

The Sixth Circuit's decision in *In re Pearson*, 773 F.2d 751 (6th Cir. 1985), controls determination of the eligibility issue in this case. In *Pearson*, debtors' original schedules showed that their unsecured debt was within the then unsecured debt limit of $100,000. They scheduled the $127,000 debt of Comprehensive Accounting Corporation as partially secured and partially unsecured. The debt to Comprehensive arose out of debtors' guarantee of another entity's obligation. It was also the subject of a pre-petition arbitration award. Debtors then amended their schedules approximately two months after they filed their petition. This time, they scheduled Comprehensive as wholly unsecured, which would mean that their total unsecured debt exceed the § 109(e) eligibility limits. Comprehensive moved to dismiss based on the amended schedules, arguing that the Pearsons were not eligible Chapter 13 debtors.

The bankruptcy court rejected Comprehensive's argument, apparently on the grounds that the original schedules controlled the eligibility determination. The Sixth Circuit affirmed on the grounds that it was within the bankruptcy court's discretion to determine debtors' eligibility based solely on the original schedules. In so doing, the Sixth Circuit emphasized that the words of the statute direct that the determination be based on noncontingent, unliquidated unsecured debts "on the date of the filing of the petition." These words resulted in the further direction to bankruptcy courts, analogizing to the analysis required to determine whether diversity jurisdiction exists in the federal courts, that "Chapter 13 eligibility should normally be determined by the debtor's schedules, checking only to see if the schedules were made in good faith." *Id.*, 773 F.2d at 758.

The interpretation and application of *Pearson* is subject to subtle differences of opinion among bankruptcy courts within the Sixth Circuit. As one court noted, "*Pearson* is frequently misinterpreted as requiring in all cases that the court not engage in an inquiry as to whether the unsecured debts exceed the limit but instead inquire into whether the debtors believed in good faith that they were eligible for chapter 13 relief." *In re Mannor*, 175 B.R. 639, 641-42 (Bankr. E.D. Mich. 1994). Another court found that "*Pearson* does not mandate that the bankruptcy court's evaluation must be limited to only the schedules as originally filed." *In re Faulhaber*, 269 B.R. 348, 352 (Bankr. W. D. Mich. 2001). Yet another court interpreted *Pearson* as clarifying that "a court should rely on the schedules as of the date of filing and should look beyond the schedules only if the court determines that they were not filed in good faith." *In re Fuson*, 404 B.R. 872, 874 (Bankr. S.D. Ohio 2008). And another court has stated that *Pearson* makes the Debtor's bankruptcy petition and schedules "the starting point in the Court's § 109(e) eligibility analysis" and that "[t]he

schedules–even if filed in good faith–are not dispositive of a debtors' eligibility for Chapter 13 relief." *In re Smith*, 365 B.R. 770, 780 (Bankr. S.D. Ohio 2007).

The procedural directives that this court derives from *Pearson* for purposes of the instant inquiry into Debtors' debts "on the date of the filing of the petition" are that: (1) the schedules are unquestionably the starting point of the eligibility inquiry, but may also be the ending point under certain circumstances; (2) the word "normally" used with respect to reliance on schedules implies exceptions for the proper application of a court's discretion so long as the determination focuses on determining debts "on the date of filing," *In re Mannor*, 175 B.R. at 641-42; and (3) given the need for parties in interest to know § 109(e) eligibility early in a case, the eligibility determination should not depend on the claims allowance process (based on the Sixth Circuit's quoting with approval a case that states that the court considers debts as they exist at the time of filing, "not after a hearing") and turn into separate satellite litigation that dominates and delays the Chapter 13 proceedings, *In re Odette*, 347 B.R. 60, 62-63 (Bankr. E.D. Mich, 2006). The court generally agrees with the reasoning of *In re Smith*, which finds that a court must make an independent determination apart from Debtor's schedules whether debts are contingent and unliquidated. *In re Smith*, 265 B.R. at 780-81. Indeed that virtually every debt listed is characterized as contingent or unliquidated causes the court to question the accuracy of the characterization.

The court believes that Debtor's Schedule D secured debt should be treated as unsecured to the extent secured creditors' claims exceed the value of their collateral. *In re Groh*, 405 B.R. 674 (Bankr. S.D. Cal. 2009); *In re Fuson,* 404 B.R. at 875-76. *Contra In re Holland*, 293 BR 425, 428 (Bankr. N. D. Ohio 2002). The unsecured amount of Schedule D debt is listed at $187,762.85 and is all listed as unliquidated, contingent or both. However, as all of the debts arise out of mortgages or consensual secured lending arrangements, the court sees no reasonable basis, nor has Debtor identified any, for treating such debts as contingent or unliquidated. All of the bifurcated unsecured debt should thus be included in the eligibility determination.

Debtor's Schedule E and F debt is almost all identified as contingent and unliquidated as it arises out of the failed PEC Biofuels business conducted by a separate entity of which Debtor was the principal. The court generally agrees with the reasoning of *In re Odette* with respect to exclusion of debts incurred by an entity in the individual eligibility determination, where the potential basis for personal liability is not a personal guaranty or independent statutory authority, as with certain tax debts, but piercing the corporate veil. Where there is no personal guarantee and no pre-filing

3

determination of personal liability, *Odette* relies on *Pearson* to defer to a debtor's schedules as to exclusion on the grounds of contingency. Thus, the court agrees that Debtor is generally entitled in this case to exclude the PEC Biofuels debts listed on Schedule F as contingent or unliquidated. There are, however, two exceptions.

The first exception is the debt listed on Schedule F as owed to Huntington National Bank in the amount of $323,815.72 arising out of personal guarantees. The court does not believe that these debts are properly scheduled as contingent. *See In re Blair,* Case No. 07-50262, 2007 Bankr. LEXIS 4742 (Bankr. S.D. Ohio, Dec. 13, 2007). And Debtor and Huntington have separately acknowledged through a stipulated order on record with the court, [Doc. # 14], that Huntington's allowed unsecured claim is $100,000. The stipulated agreement between the parties, memorialized in a court order, cannot in the court's view be ignored as part of the eligibility determination as specifying a liquidated amount. *Cf. Pearson*, 727 F.2d at 758 ("[t]hat a good faith claim of eligibility was made is fortified by the fact that Comprehensive filed its claim as a secured claim."). *But cf. In re Rohl*, 298 B.R. 95, 104 (Bankr. E.D. Mich. 2003)(court decries "a debtor's post-petition efforts to gerrymander eligibility requirements by picking and choosing debts to somehow settle without any court supervision or process").

The second exception are five credit card debts(three Bank of America credit cards, one Capital One credit card and one Washington Mutual credit card). They are not identified as PEC Biofuels debts, although Schedule F does state that they were used to purchase supplies for the business. These are all accounts, four of which have very specific debt amounts listed to the penny. There is no known or identified factual or legal basis for characterizing these five debts as unliquidated or contingent. Accordingly, the total scheduled amount of ($33,135.43) arising from these five debts must also be included in the eligibility total.

Thus, even treating Debtor's Schedule D bifurcated unsecured debt ($187,762.85) and his Schedule E priority tax debts ($12,895.33) as noncontingent and liquidated, and including those debts listed on Schedule F specified above ($133,135.43), Debtor is just within the $336,900 eligibility limit at $333,793.61 in noncontingent liquidated unsecured debt.

Based on the foregoing and as otherwise stated on the record by the court, for good cause shown,

**IT IS ORDERED** that the Trustee's Chapter 13 Trustee's Motion to Dismiss Based Upon Debtor's Exceeding Chapter 13 Unsecured Debt Limits under 11 U.S.C. § 109(e) [Doc. # 19] is

**DENIED.**